IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Darrin Jacobi McLean,**<br>Petitioner,<br><br>v.<br><br>**Commonwealth of Virginia,**<br>Respondent. | )<br>)<br>)<br>)   1:20cv177 (CMH/JFA)<br>)<br>)<br>) |

MEMORANDUM OPINION

Under consideration is the Commonwealth of Virginia's Motion to Dismiss Virginia state prisoner Darrin McLean's ("petitioner" or "McLean") petition for writ of habeas corpus, which he filed pursuant to 28 U.S.C. § 2254. [Dkt. Nos. 26-28]. For the reasons explained below, the Motion to Dismiss must be granted, and the petition must be dismissed.

## I. Background

Petitioner is currently in custody pursuant to a judgment of the Circuit Court for the City of Virginia Beach. [Dkt. No. 1]; Case No. CR16-3085-00, -01 ("Tr. Ct. Rec."). This judgment entered following an October 18, 2017 bench trial after which a judge of that court found McLean guilty of robbery and threatening to bomb or burn a structure. Tr. Ct. Rec. At a hearing on February 5, 2018, the court sentenced petitioner to twelve years' incarceration with three years of that sentence suspended. Id.

Petitioner appealed his convictions to the Court of Appeals of Virginia, challenging the sufficiency of the evidence presented against him. Record No. 0200-18-1 ("Ct. App. Rec."). His appeal was denied on October 23, 2018. Id. In denying the appeal, the Court of Appeals summarized the facts of the case as follows:

On June 14, 2016, Karen Phillips was working as the assistant manager of the Chartway Federal Credit Union on Kellam Road in Virginia Beach. The bank opens at 9:00 a.m., and no customers are permitted in the building before then. As Phillips was working at her desk behind the teller windows that morning, she noticed a black male enter the bank wearing a dark-colored jumpsuit and some sort of head covering. The man drew Phillips's attention because he was "wearing heavy clothing and it was summertime." Phillips described the clothing as a heavy, dark-colored jumpsuit. The man approached the teller counter and handed the teller a note that stated:

> There is a Bomb on this building
> Put the money in this bag Fast Because if I'm not out of here [illegible] then this place will blow. Don't give your life away over money and get everyone killed.

When Phillips, who had already started toward the teller counter, arrived, the teller stepped back and opened her cash drawer. The man handed Phillips a dark canvas, grocery-style bag. "Because of the note[,]" Phillips took approximately $110 from the cash drawer, put it in the bag, and gave the man the bag. The man then left through the glass doors at the front entrance of the bank. Phillips then locked the door and summoned the police.

Virginia Beach Police forensic specialist Katherine Policella arrived at the bank at 11:02 on the morning of June 14, 2016, and began to process the scene for evidence, particularly fingerprints. The scene was secured when Policella arrived, and an officer was stationed at the glass doors. Policella recovered multiple latent fingerprints from the interior and exterior of the glass doors. Policella also collected the note the man had passed to the teller.

Subsequent analysis of some of the fingerprints recovered from the interior of the glass doors indicated that they were from appellant's right thumb, index finger, and middle finger. Based on the fingerprint match and other investigation, Virginia Beach Police Detective McArthur-Evans obtained warrants for [petitioner's] arrest and a search warrant for his girlfriend's home. [Petitioner] was arrested at his girlfriend's house on June 16, 2016. During the search of the girlfriend's house, Detective McArthur-Evans found a pair of dark "coveralls" and a black grocery bag on the top shelf of the hall closet.

Phillips was unable to identify [petitioner] at trial because of the way the robber was dressed; she could only describe what the robber looked like when he entered the bank. However, Phillips stated that the coveralls that the police recovered were "similar to the outfit" the robber wore. Likewise, the canvas bag looked like the canvas bag the robber had handed to her. The Commonwealth also presented evidence that the bank's interior glass doors are cleaned every weeknight after the bank has closed. Although appellant had an account at the bank, the last time he

had conducted a transaction at the Kellam Road branch had been on March 29, 2016.

App. Ct. Rec.

Petitioner moved for review by a three judge panel, a request that was denied on February 19, 2019. 2019. Id. Finally, petitioner appealed his conviction to the Supreme Court of Virginia, which refused his petition by order dated June 10, 2019. Record. No. 190287.

On February 18, 2020, petitioner filed the instant petition. See Dkt. No. 1. He raises the following claims[1]:

1. The Commonwealth's opening statement was inconsistent with the evidence produced at trial in the following ways:

    a. In its opening statement, the Commonwealth claimed that the robber stated there was a bomb in the bag he handed to the teller. [Dkt. No. 1] at 5, 21. During trial, however, the "Commonwealth witness clearly stated on October 18, 2017 someone approach the teller window and pass a note asking for money." Id.

    b. In its opening statement, the Commonwealth claimed that the robber wore glasses at the scene of the crime. [Dkt. No. 1] at 18. A witness later claimed that she could not recall if the defendant wore anything on his face. Id.

    c. In its opening statement, the Commonwealth incorrectly stated that the robbery in question occurred in January 2016. [Dkt. No. 1] at 24.

2. The evidence was insufficient to establish petitioner was the robber for the following reasons:

    a. A witness stated that she could not identify the race of the robber nor if the robber had "some sort of skin discoloration." [Dkt. No. 1] at 7.

    b. A buccal swab did not conclusively establish petitioner was the robber. [Dkt. No. 1] at 16.

    c. The Commonwealth failed to prove that "the items that they pull [sic] from the girl [sic] residence were actual items the robber had on in the bank video." [Dkt. No. 1] at 19.

---

[1] Petitioner's claims are transcribed on dozens of pages of loose-leaf paper and are quite difficult to understand. The Court has compiled the list of claims that follows by broadly construing petitioner's arguments and referring to the list of claims compiled by respondent. Petitioner does not challenge respondent's construction of his claims.

3

    d. A bank employee could not recall whether he cleaned the bank's door handles on the day of the robbery. [Dkt. No. 1] at 20.

    e. A witness stated that the clothing recovered "looks like" it "could be" the outfit worn by the robber but did not definitively state that the clothing was the same. [Dkt. No. 1] at 22.

    f. A witness stated that the robber was a black male with skin discoloration but could not definitively identify the defendant. [Dkt. No. 1] at 7, 23.

    g. The Commonwealth did not prove that the residence in which the clothing presented at trial was found belonged to petitioner. [Dkt. No. 1] at 25.

    h. The external side of the bank door was never tested for fingerprints. [Dkt. No. 1] at 26.

3. The trial court relied on phone calls which were not in evidence. ("Judge ruled on evidence that wasn't there.") [Dkt. No. 1] at 8, 27.

4. "No personal knowledge: Detective MacArthur lied under oath in a court of law" with regard to how she came to know petitioner's address. [Dkt. No. 1] at 10.

5. The trial court improperly admitted fingerprint evidence because:

    a. There was insufficient evidence as to the time petitioner's fingerprint was placed on the bank door. [Dkt. No. 1] at 17.

    b. The state utilizes fewer reference points in identifying fingerprints than federal law enforcement authorities do. Id.

    c. The individual who cleaned the doors could have left his own fingerprints on the door. [Dkt. No. 1] at 12, 20.

6. Trial counsel was ineffective because petitioner "did not get [his] motion of discovery." [Dkt. No. 1] at 29.

[Dkt. No. 1].

## II. Exhaustion and Procedural Default

***A.***   ***Standard of Review***

Before a state prisoner may file a petition for a writ of habeas corpus in federal court, the prisoner must first exhaust his claims in the state court system. 28 U.S.C. § 2254(b)(1)(A).

Indeed, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In Virginia, to exhaust state remedies, "a petitioner must present the same factual and legal claims raised in the [federal] petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition." Sparrow v. Dir., Dep't of Corr., 439 F.Supp.2d 584, 587 (E.D. Va. 2006).

A successfully exhausted claim may nevertheless be deemed "procedurally defaulted" and barred from federal review if a state court denies that claim pursuant to an independent and adequate state law ground. See Harris v. Reed, 489 U.S. 255, 259 (1989). And a federal habeas court may deem a claim not presented to the highest state court exhausted and barred from review "if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

Federal habeas petitioners may overcome procedural bars and receive review of their claims through a showing of cause and prejudice, see Gray v. Netherland, 518 U.S. 152, 162 (1996), or actual innocence, see McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). Additionally, in Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court provided habeas petitioners with an additional avenue for relief with respect to defaulted claims of ineffective assistance of counsel. Specifically, Martinez held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was

5

ineffective." Martinez, 566 U.S. at 17. To demonstrate that the underlying ineffective assistance claim is "substantial," the petitioner must show that that claim has "some merit." Id. at 14.

*B.     Analysis*

Claims 1, 3, 4, 5, and 6 were not presented to the state's supreme court.[2] See Ct. App. Rec.; Record No. 190287. If petitioner were now to attempt to present those claims in a state habeas proceeding, the claims would be barred due to the relevant statute of limitations, which requires habeas petitions to be filed within one year of the expiration of the time to file a direct appeal of a conviction. See Va. Code § 8.01-654(A)(2). As a result, under Fourth Circuit law, petitioner's claims are deemed simultaneously exhausted and defaulted. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (federal habeas claims are simultaneously exhausted and defaulted "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present her claims in order to meet the exhaustion requirement would now find the claims procedurally barred.") (internal quotation omitted).

Petitioner implies that he is actually innocent of the crimes for which he was convicted but has not made a sufficient showing to excuse his procedural default on this basis. Indeed, to prove a claim for actual innocence and thus overcome the procedural default bar, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of [] new evidence." Schlup v. Delo, 513 U.S. 298, 326 (1995). The Supreme Court has "caution[ed] ... that tenable actual-innocence gateway pleas are rare," and the "standard is 'demanding' and seldom met." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (citing House v. Bell, 547 U.S. 518, 538 (2006)).

---

[2] Petitioner presented only two claims to the state supreme court on direct appeal: (1) a claim based on the sufficiency of the evidence adduced at trial and (2) a claim contesting the trial court's denial of post-conviction bail. See Ct. App. Rec.; Record No. 190287. Petitioner did not file a habeas petition within the state court system.

Here, petitioner has not introduced any new evidence which shows his innocence of the crimes for which he was convicted. He has accordingly failed to meet the high standard required by the miscarriage of justice exception. Cf. Coleman v. Clarke, No. 2:15-cv-46, 2015 WL 10012994 (E.D. Va. Nov. 16, 2015) (finding petitioner whose claims were procedurally defaulted failed to prove entitlement to miscarriage of justice exception by failing to present new evidence of his innocence).

Petitioner makes no arguments with respect to cause for and prejudice arising from his defaults and, with respect to his ineffective assistance claim, is not entitled to relief under Martinez due to his failure to initiate any state habeas proceedings.[3] See, e.g., Anderson v. Clarke, No. 2:13cv223, 2014 WL 1203032, at *5 (E.D. Va. Mar. 24, 2014) ("Martinez analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever.") (quoting Jones v. Pa. Bd. of Prob. & Parole, 492 F. App'x 242, 246–47 (3d Cir. 2012)), appeal dismissed, 744 F. App'x 828 (4th Cir. 2018).

### III. Scope of Cognizable Claims Under § 2254

Respondent contends that several of petitioner's claims are not properly before the Court because they raise issues of state law not cognizable under § 2254. [Dkt. No. 28] at 5. "[I]t is

---

[3] Even if Martinez did apply, petitioner would not be entitled to relief for his default of Claim 6. In that claim, petitioner asserts that his trial attorney was ineffective for his failure to provide him a discovery motion. Petitioner does not allege, though, that his attorney's alleged failure to provide him with the discovery motion had any effect on the outcome of his trial, let alone allege specific facts allowing for a finding that there is a "reasonable probability" that the outcome would have changed. The ineffective assistance claim is thus not "substantial" and would not entitle to petitioner to any relief. Cf. United States v. Oliver, 865 F.2d 600, 605 (4th Cir. 1989) (denying ineffective assistance of counsel argument where petitioner did not allege that, but for counsel's failure to investigate insanity defense, outcome of criminal proceedings would have differed); Hicks v. Dir., Va. Dep't of Corrs., No. 7:16cv384, 2017 WL 2799315, at * (W.D. Va. June 27, 2017) (denying ineffective assistance claim, stating "Claim 4 is entirely unsupported by facts: [petitioner] does not allege specific favorable evidence that investigation would have revealed, and he does not show how an investigation of Hackley would have affected the outcome of the trial").

7

not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "Therefore, when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review." Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999).

Although the Court does not find that every claim identified by respondent exclusively raises state law issues, it does agree that Claim 5 does so and is thus not cognizable in federal habeas. Indeed, in Claim 5, petitioner argues that the trial court erred in admitting fingerprint evidence. [Dkt. No. 1] at 12, 17, 20. Questions regarding the admissibility of evidence normally are matters of state law and procedure, and do not implicate federal constitutional issues. "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). Moreover, to be cognizable on federal habeas corpus review, a claim involving a state evidentiary ruling not only must be expressed as a constitutional deprivation, but also first must have been argued in such terms in the state forum. Moore v. Illinois, 408 U.S. 786, 799 (1972) (due process issue concerning admission into evidence of shotgun raised for the first time in federal petition not properly before federal court where "there [was] nothing in the record to disclose, that due process was argued in the state courts"); see also Duncan v. Henry, 513 U.S. 364 (1995) (exhaustion requirement fulfilled only where § 2254 habeas petitioner first presented same factual and legal claims to state tribunals); Spencer v. Murray, 18 F.3d 237, 239-40 (4th Cir. 1994) (claim regarding admissibility of evidence that neither relied upon a constitutional provision, nor mentioned a constitutional right as infringed, did not state federal claim).

Petitioner has not couched his evidentiary claim in constitutional terms and has thus not convinced the Court of its ability to consider the claim. Accordingly, even if petitioner had not procedurally defaulted as to Claim 5, he would still be barred from relief.

## IV. Merits Analysis

In light of the analysis above, the Court must assess the merits of only one claim presented in the petition: Claim 2.

### A.   *Standard of Review*

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant such relief. Pursuant to AEDPA, when a state court has addressed the merits of a claim raised in a subsequent federal habeas corpus petition, the reviewing federal court may not grant the petition on that particular claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2). The question, then, "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

A state court's decision is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal court should

grant relief under the "unreasonable application" clause if it finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In determining whether a state court's decision was based on an unreasonable determination of the facts unearthed at its own proceeding, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)). "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude anything but [what the petitioner claims],' and when a state court's finding was 'clearly erroneous.'" Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1294 (11th Cir. 2015) (quoting Miller–El, 545 U.S. at 265).

**B.**     *Analysis*

In Claim Two, petitioner asserts that the evidence adduced at trial was, as a matter of law, insufficient to support a conviction against him. Federal habeas petitions that assert there was insufficient evidence to support a state court conviction should be granted only if "no rational trier of fact could have found proof of [the petitioner's] guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). A federal court thus may only overturn a state court decision if that decision was "objectively unreasonable;" it may not overturn the decision simply because it disagrees with the outcome. Cavazos v. Smith, 565 U.S. 1, 3 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)). A reviewing federal court must "view[] the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)).

Reviewing the evidence presented at trial—a recounting of which can be found at the beginning of this Memorandum Opinion—the Court of Appeals of Virginia found that "a rational factfinder could reasonably reject [petitioner's] theories in his defense and find that the totality of the circumstances [] proved beyond a doubt that appellant was the individual who entered the bank and threatened to blow it up if his demand for money was not met." Ct. App. Rec.

This Court agrees. Petitioner's fingerprints were found on the bank's door despite the fact that petitioner had not visited the bank in his capacity as a customer in months. Additionally, clothing consistent with the clothing alleged to have been worn by the robber was found in the home at which petitioner had been staying. On this basis, the factfinder's rejection of petitioner's proffered theories of innocence and the appellate courts' upholding of that decision[4] were eminently reasonable and not contrary to federal law. Cf. Young v. Clarke, No. 7:11cv201, 2011 WL 3584996, at *4 (W.D. Va. Aug. 12, 2011) ("While Young continues to maintain that he did not present a deadly weapon during the robbery, the jury was free to believe his admission that he committed the robbery and reject his contention that he did not use an actual gun."). Indeed, under the demanding Jackson standard, there can be no doubt that the state court's decision is entitled to deference.

---

[4] The Court of Appeals of Virginia provided a reasoned explanation for its denial of petitioner's sufficiency of the evidence argument. See Ct. App. Rec. The Supreme Court of Virginia denied petitioner's appeal without discussion of the merits of the claim, thus adopting the state intermediate court's reasoning. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

## V. Conclusion

For the reasons stated above, respondent's Motion to Dismiss will be granted through an Order that will accompany this Memorandum Opinion.

Entered this 29 day of July 2021.

Alexandria, Virginia

_/s/ Claude M. Hilton_
United States District Judge